365 A.2d 1254

**Howard A. HOFER, Appellant,**

**v.**

**LOYAL ORDER OF MOOSE OF the WORLD, MT. PLEASANT LODGE NO. 27, a non-profit corporation.**

Superior Court of Pennsylvania.

Argued April 19, 1976.

Decided Nov. 22, 1976.

Richard P. Jacob, Pittsburgh, for appellant.

Robert G. Weisgerber, Mount Pleasant, James R. Silvis, Greensburg, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE and VAN der VOORT, JJ.

344

PRICE, Judge.

This is an appeal from an order of a court en banc opening a default judgment. We reverse and reinstate the default judgment.

The basis of this case is a contractual dispute. Plaintiff-appellant Howard A. Hofer is a building contractor whose corporate alter-ego entered into a written agreement with defendant-appellee Loyal Order of Moose of the World, Mt. Pleasant Lodge No. 27 to construct a building to serve its organization. The structure was completed near the end of 1968, and the Moose Lodge occupied it shortly thereafter. Problems arose regarding the final payment on the $93,000 contract price. The amount still owing was $9,300, ten per cent of the contract price, which was withheld pending final acceptance of the building. Payment was contingent upon the issuing of a final certificate by the job architect. The architect, James Gayton, compiled a "punch list" of changes or repairs which he felt were necessary prior to final acceptance. The principal concern was 900 square feet of floor space in the area designated as a lounge. The floor in this area was uneven or "wavy," making it unsuitable for the tables and chairs it was meant to accommodate. The parties attempted to reach a mutual decision on a remedy for this condition, but apparently were unable to do so.

On August 4, 1972, appellant filed a complaint in assumpsit seeking the remaining $9,300 of the contract price. Service was made upon appellee on August 10, and the attorney for appellee entered his appearance on August 30. On April 11, 1973, a default judgment was entered in favor of appellant based on appellee's failure to answer the complaint. Appellee filed a petition to open the judgment on June 1, 1973, and appellant answered. The court below appointed a commissioner to take testimony, make findings of fact and issue recom-

mendations. A hearing was held on October 23, 1973. The testimony and the commissioner's report, recommending that the judgment be opened, were subsequently filed. On August 13, 1975, the lower court, en banc, filed an opinion and order adopting and affirming the findings and conclusion of the commissioner.

■ A petition to open a default judgment is an appeal to the equitable power of a court, and it is thus generally stated that a lower court's disposition of such a petition will not be overturned absent an error of law of a manifest abuse of discretion. *McCoy v. Public Acceptance Corp.*, 451 Pa. 495, 305 A.2d 698 (1973); *Jost v. Phoenixville Area School District*, 237 Pa.Super. 153, 346 A.2d 333 (1975). When an action is cast in assumpsit, three requisite elements must coalesce before a default judgment may be opened: (1) the petition to open must have been promptly filed; (2) the failure to file a timely answer to the complaint must be reasonably explained in the petition; and (3) a meritorious defense must be incorporated in the petition. *Jost v. Phoenixville Area School District, supra.*

■ The default judgment herein was taken on April 11, 1973. Notice of this action was communicated to appellee's counsel by letter dated April 13, 1973, and was received on April 14, 1973. Appellee filed his petition to open the judgment on June 1, 1973, approximately forty-seven days after receiving notice of its entry. In *McCoy v. Public Acceptance Corp., supra*, 451 Pa. at 500, 305 A.2d at 700, our supreme court stated that "filing the petition to open after two and one-half weeks can hardly be considered prompt." There is certainly no bright line in this area, however, and a determination of prompt filing or its absence must be based on all the circumstances.

In explanation of the six to seven week delay between its receipt of notice of the default judgment and the fil-

ing of a petition to open, appellee states only that "subsequent discussions were had with reference to possible settlement of this matter." Appellee does not allege that appellant made any promises or representations that misled appellee in regard to the probability of settlement. The parties had been embroiled in this dispute for more than four years, with settlement as the apparent objective on both sides, and this goal had not been achieved. It is extremely difficult to understand why appellee, knowing that a default judgment had been taken and having no particular reason to expect that settlement would finally be reached, was dilatory in filing a petition to open. Prompt filing of such a petition could have had no prejudicial effect on settlement negotiations. On the contrary, it would have strengthened appellee's negotiating position and protected it in the event that settlement could not be effected, a possibility which should have loomed large under the circumstances. On these facts, the petition to open the judgment was not promptly filed, and should have been dismissed.

Although the conclusion reached in the previous discussion dictates our disposition of this appeal, a consideration of the two other requisites for the opening of a default judgment further illustrates the propriety of this result. We therefore proceed to examine these issues.

Eight months passed between the filing of appellant's complaint on August 10, 1972, and the entry of default judgment on April 11, 1973. In appellee's petition to open, counsel for appellee, Robert G. Weisgerber, Esquire, states that his failure to file an answer was based on an understanding reached with appellant's attorney, Richard P. Jacob, Esquire. This alleged understanding stemmed principally from a phone conversation which took place on or about August 30, 1972. Attorney Weisgerber had planned to file preliminary objections to the complaint, but was assured by Attorney Jacob that he

could furnish further information which would make the preliminary objections unnecessary. The subject of default judgments was also mentioned. According to his testimony, Attorney Jacob stated that he did not "snap" default judgments and that he would give appellee additional time to respond. According to the petition, Attorney Jacob stated that he was "not disposed to take default judgments." It is apparent from the record that Attorney Weisgerber interpreted these words as an assurance that no default judgment would be taken in this case. The petition also maintains it was agreed that "further action on this matter would not be taken until such time as defense counsel talked with the architect involved in the construction of the building. . . . " Attorney Weisgerber stated that his impression, following the August 30th conversation, was that the parties were working toward a settlement.

In his testimony before the commissioner, Attorney Weisgerber recounted a second phone conversation with Attorney Jacob. In this alleged conversation, Attorney Weisgerber stated that he expected to meet with the architect, James Gayton, in the near future.

"Again my best recollection is around the time of the election I indicated to Mr. Jacob that since the election was nearly over [and] would be over shortly, I felt that I should be able to come to some settlement on this matter." [N.T. 5]

Attorney Jacob testified that he had no recollection of any phone conversation with Attorney Weisgerber other than the one which took place on August 30.

Assuming that the conversation "around the time of the election" did occur, we are left with a period of four to five months between that conversation and entry of the default judgment. Appellee admits that there was no communication between the parties during this period. No explanation for the further delay is given in ei-

ther the petition to open or Attorney Weisgerber's testimony other than his complete reliance on Attorney Jacob's "not being disposed to take default judgment" and his belief that the parties were working toward an eventual settlement. Because there were no ongoing negotiations between the parties, and appellee's counsel fails to explain his lack of activity during this period, the petition to open clearly does not meet the requirement that the moving party reasonably explain his failure to file a timely answer to the complaint.

 Appellee's petition to open the default judgment contains, *inter alia,* the following paragraph:

"7. The defendant, through its counsel, avers that it has and can develop a just, true and meritorious defense to plaintiff's cause of action generally and specifically insofar as the defendant denies that the plaintiff completed performance of the alleged contract according to the terms of said contract."

This is the only reference in appellee's petition to its defense on the merits. The facts and circumstances upon which appellee based its claim of a valid defense were developed more fully at the hearing before the commissioner as previously discussed. It must be determined, however, if the quoted paragraph from appellee's petition was sufficient, under the case law, to present a valid defense.

In *Ab v. Continental Imports,* 220 Pa.Super. 5, 9, 281 A.2d 646, 648 (1971), this court stated that "[t]he petition to open must not only allege a meritorious defense, but such defenses must be set forth in precise, specific, clear and unmistaken terms. *Young v. Mathews* [383 Pa. 464, 119 A.2d 239 (1956)]." It can scarcely be maintained that the statement in appellee's petition, utterly devoid of underlying facts or details, meets this standard. Appellee would have done well to have heeded this court's recommendation in *Westinghouse Credit Corpora-*

*tion v. Wenzel,* 223 Pa.Super. 87, 90, 289 A.2d 759, 761 (1972), *quoting Ab v. Continental Imports, supra,* 220 Pa.Super. at 9, 281 A.2d at 648 (1971): " 'It would have been good practice, especially under the circumstances in this case, if in fact a meritorious defense existed, to have attached an answer setting it forth in the petition to open, but although he prepared the petition to open he never prepared an answer.' "

Because the appellee clearly failed to meet the requirements for the opening of a default judgment, the action of the court below in this case was an abuse of its discretion.

The order of the lower court opening the default judgment is reversed, and the judgment is reinstated.

SPAETH, J., did not participate in the consideration or decision of this case.